IN THE UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | | |
|---|---|---|
| KEMMERER LABARGE ROYALTIES, LLC, a Wyoming Limited Liability Company, | § § § | |
| Plaintiff | § § | Civil Action No. 23-cv-150 |
| vs. | § § | |
| DENVER-LABARGE OIL AND GAS COMPANY, a Colorado Corporation, AND ANY OTHER UNKNOWN CLAIMANTS TO DENVER-LABARGE OIL AND GAS COMPANY INTERESTS, | § § § § § § | |
| Defendants | § § | |

## DEFENDANT REMNANT ASSETS, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND QUIET TITLE

Pursuant to F.R.C.P. 81(c), Defendant Remnant Assets, LLC (Defendant or Remnant) files this Original Answer to Plaintiff's Complaint for Declaratory Judgment and Quiet Title (hereinafter referred to as "Complaint").

### DEFENDANT'S ORIGINAL ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), Defendant responds to allegations in each corresponding paragraph as follows:

### I.    INTRODUCTION

1.    Defendant admits that this action involves the described real property. Defendant further admits that overriding royalty interests burden the oil and gas leases denominated as "E-09561-A and E-09561-B". Defendant denies that Plaintiff's exhibit accurately reflects the interests for the overriding royalty interests in for those leases. The proper allocation of the overriding royalty interests is reflected in the property records as exemplified in Defendant's Motion for New Trial and Motion for Relief from Judgment

(Motion to Vacate) p.8-9. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that the Exhibit attached to Plaintiff's complaint was created by "the then-majority shareholders of Central LaBarge as part of their disclosures to the purchasers of their shares in five companies." *See* Plaintiff's Complaint, p.2 ¶1. Defendant further lacks knowledge or information sufficient to form a belief about the truth of the allegations that "those five companies whose oil and gas interests are set forth on Exhibit 1 were after purchase of the majority shareholders interest in the five companies merged into Kemmerer-LaBarge Royalties LLC." *See id*.

## II.    PARTIES

2.    Paragraph 2 is not a statement which requires an admission or denial.

3.    On information and belief Defendant admits that Denver-LaBarge Oil and Gas Company was a Colorado company.

4.    On information and belief Defendant admits that Plaintiff is a Wyoming limited liability company.

5.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "Plaintiff merged the companies and their interests, including the Subject Interests, into Plaintiff the surviving entity." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "all of the companies and trusts merged into Plaintiff had the address of Box 391 Kemmerer, Wyoming 83101 as shown by Exhibit 2." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that Exhibit 3 is from the Wyoming State Treasurer's office or whether it shows the address used early on by the operator of the Subject Interests when reporting unclaimed property for Denver-LaBarge was Box 391 Kemmerer, Wyoming 83101. Defendant lacks knowledge or

information sufficient to form a belief about the truth of the allegations that this "Box was closed shortly after the merger of the three companies and two trusts into the Plaintiff by the Plaintiff." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "it was shortly after that time that the operator began to send the production proceeds attributable to the Subject Interests to the Wyoming Unclaimed Property Division."

6.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "Plaintiff retained a professional landman, Thomas Boyd, to review the Sublette County records for any documents concerning Denver-LaBarge." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "the documents he found and his affidavit are attached as [Plaintiff's] Exhibit 4." Defendant denies that these documents show that after an Agreement and an Assignment dated in 1924 but recorded in 1928 in Book 2 of Miscellaneous at Pages 278 and 279 ***there are no more documents of record in Sublette County Clerk's records concerning Denver-LaBarge***. This is directly contradicted by the property records in Defendants' Motion which describe with detail the override interests for not only Denver-LaBarge, but also all of the other entities with an override interest which burden the aforementioned leases including Defendant Calmonica Petroleum Corporation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "the two documents in Exhibit 4 reference the lands noted above." A Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that Exhibit 5 shows that the Colorado Secretary of State's office has no present record of Denver-LaBarge. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations that "Plaintiff was advised by

3

that office it would do a search of its archives but that might not occur for several years, if it was ever done. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations whether a "document [was] obtained from the Bureau of Land Management's lease file in Cheyenne, Wyoming." Defendant admits that the document does appear to reflect that Denver-LaBarge "was declared defunct on October 15, 1934."

7.      Defendant admits that from its pleadings, "Plaintiff seeks a Declaratory Judgment from this Court interpreting the documents affecting title or quieting title to the Subject Interests situate within Sublette County, Wyoming."

8.      Defendant denies that "predicated upon the preceding, this Court acquired *in personam* and subject matter jurisdiction over all parties and issues relating to the claims of the Plaintiff." Plaintiff's service by publication was defective as it failed to comport with the minimum due process requirements of *inter alia* the United States Constitution. Notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988). Plaintiff failed to diligently search for Defendants. Had Plaintiff diligently searched the Property records which record the interests at issue, it would have found every entity with an override interest in the oil and gas leases denominated above, including Calmonica Petroleum Corporation, a Delaware corporation.

### III.   JURISDICTION

9.      Paragraph 9 is not a statement which requires an admission or denial.

10.     Paragraph 10 does not appear to be a statement which requires an admission or denial. This Court has jurisdiction under 28 U.S.C. 1332.

11.     Defendant admits that Plaintiff is attempting to quiet title to the Subject Interest located in Sublette County, Wyoming and seeks a declaration that Plaintiff owns the Subject Interest. Defendant denies that Plaintiff has any lawful right to make such a claim.

12.     Absent the deficiencies with Plaintiff's service by publication, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations whether "Defendant, Denver-LaBarge Oil and Gas Company, has sufficient minimal contacts in the State of Wyoming in order to establish personal jurisdiction. Therefore, this Court has personal jurisdiction over this Defendant."

13.     Defendant admits that the state court had jurisdiction under Wyo. Stat. Ann. § 1-37-103.

14.     Defendant admits that the state court had jurisdiction under Wyo. Stat. Ann. § 1-37-103 and Wyo. Stat. Ann. § 1-32-201.

15.     Defendant admits that venue is proper in Sublette County, Wyoming.

## IV.    BASIS OF THE COMPLAINT

16.     Paragraph 16 is not a statement that requires an admission or denial.

17.     Defendant admits that "the Subject Interest at issue in this matter is situate within Sublette County, Wyoming, and is particularly described in Paragraph 1 above."

18.     Defendant denies that "the Subject Interests became the property of the owners of the original companies acquired by Kemmerer-LaBarge, as Denver-LaBarge ceased to exist."

19.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations whether Central LaBarge is the successor to Denver-LaBarge through an unknown purchase or acquisition process.

20.     Paragraph 20 does not appear to be a statement that requires an admission or denial. If required, Defendant admits that its claim may be adverse to Plaintiff's claim.

## V.     CLAIM FOR DECLARATORY JUDGMENT – OWNERSHIP OF MINERALS

21.     Paragraph 21 is not a statement that requires an admission or denial.

22.     Defendant admits that a justiciable controversy exists. Defendant denies that Plaintiff is the rightful, legal, and equitable owner of the described Subject Interest, in Paragraph 1, as a result of "mesne" [sic] unknown conveyances.

23.     Defendant denies that as styled the Defendants are the appropriate parties in interest in this dispute as Denver-LaBarge is a defunct company and therefore not a proper party. Defendant admits that a properly named Defendant's interest would arise from a possible adverse claim to mineral rights to, in and under the Subject Interest situated in Sublette County, Wyoming.

24.     Defendant admits that Plaintiff seeks a declaratory judgment extinguishing any and all right, title, and interest, legal and equitable, that a Defendant might claim and finding that the Plaintiff is the owner of the Subject Interest, situated in Sublette County, Wyoming. Defendant denies that Plaintiff is the rightful, legal, and equitable owner of the described Subject Interest.

## VI.     CLAIM FOR QUIET TITLE

25.     Paragraph 25 is not a statement that requires an admission or denial.

26.     Paragraph 26 does not appear to be a statement that requires an admission or denial. If required, Defendant admits that its claim may be adverse to Plaintiff's claim.

27.     Defendant admits that the Subject Interest is a proper subject for a quiet title action. Defendant admits that Plaintiff claims exclusive title to the Subject Interest, in Paragraph 1, situated in Sublette County, Wyoming.

28.     Defendant denies that Plaintiff is entitled to any relief sought.

## VII.    DEFENSES AND COUNTERCLAIM

29.     Defendant generally denies Plaintiff's allegations that it is the rightful owner of the property it claims.

30.     Defendant objects to Plaintiff's service by publication as being constitutionally inadequate and concurrently with this answer files a motion under F.R.C.P. 12(b)(4).

31.     Defendant asserts a counterclaim under Wyo. Stat. Ann. § 1-37-103 and Wyo. Stat. Ann. § 1-32-201 to quiet title to its interest in the Subject Lands formerly held by Denver-LaBarge.

32.     Defendant Remnant Assets, LLC (Remnant) is the successor in interest to the override royalty payments associated with the oil & gas production from the described property which was formerly held by Denver-LaBarge.

33.     On January 17, 1924, Denver-LaBarge assigned an undivided 3/4 interest in and to any and all revenues, rents, royalties, and profits accrued "from the following describe lands situated in Lincoln and Sublette counties, to wit, all of section 17 and the East one half (1/2) of Section 20, T. 27 N.R.113 West, also all of section 6 and the East on half (1/2) of section 7, in said township and range," to K-A-H-L Oil and Refining Syndicate (KAHL). *See* Plaintiff's Complaint, p.71-72.

34.     As described in recorded filings in Sublette County, Wyoming, on March 29, 1993, KAHL conveyed all of its interest in the following lands to the Estate of Ethel P. Kahl, c/o Frances F. Martin:

**TOWNSHIP 27 NORTH, RANGE 113 WEST OF THE 6TH P.M., SUBLETTE COUNTY, WYOMING:**

Section 6: All
Section 7: E½
Section 17: All
Section 20: E½

**Exhibit 1**.

35.     As described in recorded filings in Sublette County, Wyoming, on May 21, 1993, a district court in Sublette County Wyoming distributed the estate of Ethel P. Kahl including the above described property to Frances F. Martin. **Exhibit 2**.

36.     This property was then placed into a trust for Frances F. Martin and Kathleen L. Martin, also the Vice-President of KAHL, was made co-trustee. **Exhibit 3**.

37.     On October 2, 2007, Kathleen L. Martin acting as trustee of the Frances F. Martin Trust conveyed the above described property to herself in her individual capacity. **Exhibit 4**.

38.     Kathleen L. Martin tendered the supporting documentation in Exhibits 1-4, to Exxon Oil & Gas Resources Inc. (Exxon) who was the current operator at the time of the above described property. Exxon recognized Ms. Martin's chain of title, issued division orders, and has been paying the corresponding override royalty payments to her.

39.     On March 8, 2022 but effective September 2021, Exxon sold all of its rights and interest in the above described property to Greylock Production, LLC a Delaware limited liability company. **Exhibit 5**.

40.     On July 25, 2023, Ms. Martin conveyed all of her interest in the above described property to Remnant. **Exhibit 6**.

41.     Because Remnant is the rightful successor-in-interest to all rights, titles, payments, and interest formerly held by Denver-LaBarge, pursuant to its diversity

jurisdiction this Court should issue a declaration to that effect, quiet title from any adverse interest claimed by Plaintiff, and further declare that any payments held in suspense by any producer or the state of Wyoming should be paid to Remnant.

## PRAYER AND CONCLUSION

For the forgoing reasons, Defendant Remnant Assets, LLC requests that the court issue a take nothing judgment for Plaintiff, issue a declaration that Remnant is the rightful successor-in-interest to all rights, titles, payments, and interest formerly held by Denver-LaBarge, quiet title to from any adverse interest claimed by Plaintiff, and further declare that any payments held in suspense by any producer or the state of Wyoming should be paid to Remnant. Remnant further prays for any other relief to which it is entitled to.

Respectfully submitted,

_/s/ Joshua Eames-Cepero_
Joshua Eames-Cepero
Texas Bar No. 24109826
jeames@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR DEFENDANTS, REMNANT ASSETS, LLC AS SUCCESSOR-IN-INTEREST TO DENVER-LABARGE OIL AND GAS COMPANY, A COLORADO CORPORATION AND CALMONICA PETROLEUM CORPORATION, A DELAWARE COMPANY**

_/s/ Dale Aronson_

Dale Aronson
Wyoming Bar No. 6-2681
P.O. Box 1418
Pinedale, Wyoming 82941
307-367-2610
307-367-7300—Facsimile
daronson@wyoming.com
**ATTORNEY FOR DEFENDANTS,
REMNANT ASSETS, LLC AS
SUCCESSOR-IN-INTEREST TO
DENVER-LABARGE OIL AND GAS
COMPANY, A COLORADO
CORPORATION AND CALMONICA
PETROLEUM CORPORATION, A
DELAWARE COMPANY**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendant Remnant Assets, LLC's Answer to Plaintiff's Complaint for Declaratory Judgment and Quiet Title has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on August 31, 2023, as follows:

| Method of Service | Party(ies) | Counsel |
|---|---|---|
| Electronic | Plaintiff | Scott Ortiz<br>Will E. Reese<br>Williams Porter, Day & Neville P.C.<br>P.O. Box 10700<br>Casper, WY 82602-0700<br>307-265-0700<br>307-266-2306—Facsimile<br>sortiz@wpdn.net<br>wreese@wpdn.net |

_/s/ Joshua Eames-Cepero_

Joshua Eames-Cepero

## QUITCLAIM MINERAL DEED

K-A-H-L OIL & REFINING SYNDICATE, a Trust dated March 17, 1920, by FRANCES F. MARTIN, its President, GRANTOR, for and in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, CONVEYS AND QUITCLAIMS to THE ESTATE OF ETHEL P. KAHL, c/o Frances F. Martin, Personal Representative, 9401 Louise Avenue, Northridge, California 91325, GRANTEE, all its right, title and interest in and to the following described mineral property, to wit:

**TOWNSHIP 27 NORTH, RANGE 113 WEST OF THE 6TH P.M., SUBLETTE COUNTY, WYOMING:**

| | |
|---|---|
| Section 6: | All |
| Section 7: | E½ |
| Section 17: | All |
| Section 20: | E½. |

WITNESS this __29th__ day of __March__, 1993.

K-A-H-L OIL & REFINING SYNDICATE

ATTEST:

By: _Frances F. Martin_
FRANCES F. MARTIN,
President

_Kathleen L. Martin_
Secretary
KATHLEEN L. MARTIN

STATE OF CALIFORNIA        )
                          )
COUNTY OF LOS ANGELES      )

The foregoing instrument was acknowledged before me this __29th__ day of __March__, 1993, by FRANCES F. MARTIN, as President of the K-A-H-L OIL & REFINING SYNDICATE.

Witness my hand and official seal.

OFFICIAL SEAL
AUDREY C. WATSON
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 30, 1994

_Audrey C. Watson_
Notary Public

241364

RECORDED April 27, 19 93 3:25 pm
IN BOOK 10 QSQ PAGE 873
FEES $ 10.00   COUNTY CLERK
SUBLETTE COUNTY, PINEDALE, WYOMING
by Cathy Saxton

EXHIBIT
1

THE DISTRICT COURT IN AND FOR SUBLETTE COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

IN THE MATTER OF THE ESTATE )
            OF )
ETHEL P. KAHL, )    Probate No. 1409
          Deceased )

FILED
BY: _____

MAY 2 8 1993

MARILYN M. JENSEN
CLERK OF DISTRICT COURT
PINEDALE, WYO

**FINAL DECREE OF DISTRIBUTION**

THIS MATTER came before the Court on May 21, 1993, for
hearing on the Final Report and Petition for Distribution as
presented to the Court on behalf of the Personal Representative
of the above captioned estate, and the Court, having examined
said Final Report and Petition for Distribution finds that it has
full and complete jurisdiction over the subject matter and all
interested parties; that each and all of the statements made in
said Final Report and Petition for Distribution are true and
correct; that there has been no income or disbursements by the
estate, other than costs, expenses, and fees of administration,
all of which are a part of the Court file, so an accounting is
excused; that no inheritance tax or estate tax is chargeable
against the estate and that the filing of a receipt should be
excused; that the conduct of the Personal Representative in the
administration of this estate as reflected in said report is in
accordance with the law and the prior Orders of this Court; that
the administration of said estate is fully and finally concluded
and that said estate is ready for distribution; that order ought
to be entered at this time fully and finally approving, ratifying
and confirming the Final Report and Petition for Distribution,
and all doings of the Personal Representative in the premises;
that the proposed Distributee as set forth in the Final Report is
entitled to distribution of all of the assets of the estate; and
that decree ought to be entered providing for the full and final
distribution of this estate, and the closing thereof.

EXHIBIT
2

241778

RECORDED June 2 93 10:45 AM
IN BOOK 101 Misc 472
FEES $ 8.00 COUNTY CLERK
SUBLETTE COUNTY, PINEDALE, WYOMING

by Cathy Saxton

THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1.  The Final Report and Petition for Distribution be and the same hereby is fully and finally ratified, confirmed and approved, and all of the doings of the Personal Representative in the premises be and the same are hereby fully and finally approved.

2.  The Personal Representative shall proceed to make final distribution of all assets of this estate now in her hands, and that all of the assets of the estate as shown on the inventory as filed herein are hereby declared to be the sole property of and are hereby set over to and vested absolutely in the following named Distributee:

        FRANCES F. MARTIN
        9401 Louise Avenue
        Northridge, California 91325,

which property includes all right, title and interest of the decedent in the following described mineral property:

        TOWNSHIP 27 NORTH, RANGE 113 WEST OF THE 6TH P.M., SUBLETTE
        COUNTY, WYOMING:
                Section 6:      All
                Section 7:      E½
                Section 17:     All
                Section 20:     E½.

In making such distributions the Personal Representative shall execute and deliver such assignments and negotiations and like instruments that shall be necessary or appropriate to effectuate said distribution.

3.  Any and all after-discovered property of whatsoever nature and wherever located, if any there be, shall be and the same hereby is distributed to the above-named distributee.

4.  When the Personal Representative has completed the distribution of all estate assets, as ordered herein, with all documentation necessary with respect thereto, the Personal Representative shall file with the Court her Petition for Discharge.

        DATED this 27th day of May, 1993.

                                        BY THE COURT:

                                        _____
                                        District Court Judge

## QUITCLAIM MINERAL DEED

FRANCES F. MARTIN, a single woman, of Northridge, California, GRANTOR, for and in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, CONVEYS AND QUITCLAIMS to FRANCES F. MARTIN (and successors), TRUSTEE OF THE MARTIN 1990 TRUST, dated March 15, 1990, 9401 Louise Ave., Northridge, California 91324, GRANTEE, all her right, title and interest in and to the following described mineral property, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Wyoming, to wit:

TOWNSHIP 27 NORTH, RANGE 113 WEST OF THE 6TH P.M., SUBLETTE COUNTY, WYOMING:

| | |
|---|---|
| Section 6: | All |
| Section 7: | E½ |
| Section 17: | All |
| Section 20: | E½ |

WITNESS my hand this *2* day of *October*, 1993.

*Frances F. Martin*
FRANCES F. MARTIN

STATE OF CALIFORNIA      )
                         )
COUNTY OF LOS ANGELES    )

The foregoing instrument was acknowledged before me this *12d* day of *October*, 1993, by FRANCES F. MARTIN.

Witness my hand and official seal:

OFFICIAL SEAL
AUDREY C. WATSON
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 30, 1994

*Audrey C. Watson*
Notary Public

**243615**

Oct 18          1993 11:16 AM
PAGE 15
COUNTY CLERK
SUBLETTE COUNTY, PINEDALE WYOMING
By Cathy Saxton

EXHIBIT
3

15

## QUITCLAIM MINERAL DEED

KNOW ALL MEN BY THESE PRESENTS, That **KATHLEEN MARTIN, Successor Trustee of The Martin 1990 Trust, dated March 15, 1990**, Grantor, of the County of San Diego State of California in consideration of Ten Dollars (and other good and valuable consideration), receipt and sufficiency of which is hereby acknowledged, CONVEYS AND QUITCLAIMS to KATHLEEN MARTIN, whose address is 9760 Meadow Mesa Drive, Escondido, California 92026, all right, title and interest in and to the following described mineral property, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Wyoming, to-wit:

> Township 27 North, Range 113 West of the 6th P.M., Sublette County, Wyoming:
>
> Section  6:      All
> Section  7:      E½
> Section 17:      All
> Section 20:      E½

WITNESS my hand this 2 day of October _____, 2007.

_Kathleen Martin_
Kathleen Martin, Successor Trustee

STATE OF CALIFORNIA    )
                       )SS
COUNTY OF SAN DIEGO    )

On the 2nd day of October _____, 2007, before me, _Marisol Pina, Notary Public_ (name & title of officer) personally appeared Kathleen Martin, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

MARISOL PINA
Commission # 1757310
Notary Public - California
San Diego County
My Comm. Expires Jul 15, 2011

_____ Notary Public

Comm. Exp.:_____

331061

RECORDED Oct. 11 20 07 12:08 PM
IN BOOK 3 Min Deed PAGE 167
FEES $ 8.00 _____ COUNTY CLERK
SUBLETTE COUNTY, PINEDALE, WYOMING

by Cynthia J. Friel

**EXHIBIT**
**4**

WHEN RECORDED RETURN TO:
Greylock Production, LLC
500 Corporate Landing
Charleston, West Virginia 25311
Attn: Drew McCallister

Doc:0420665 Book:326 Page:482-640
Filed At 16:18 ON 03/10/22  Fees: 4,425.00
Carrie S. Long County Clerk  By JS
Sublette County

## ASSIGNMENT, BILL OF SALE AND CONVEYANCE

| | |
|---|---|
| **STATE OF WYOMING** | § |
| | § |
| **COUNTY OF SUBLETTE** | § |

THIS ASSIGNMENT, BILL OF SALE AND CONVEYANCE (this "*Assignment*"), dated March 8, 2022, but to be effective as of September 1, 2021, at 12:01 a.m. Prevailing Mountain Time ("*Effective Time*"), is made and executed by and between EOG Resources, Inc., a Delaware corporation, with an address of 1111 Bagby, Sky Lobby 2, Houston, Texas 77002 ("*Assignor*") and Greylock Production, LLC, a Delaware limited liability company, with an address of 500 Corporate Landing, Charleston, West Virginia 25311 ("*Assignee*").  The Assignee and the Assignor may be referred to herein collectively as the "*Parties*," or individually as a "*Party*."

### ARTICLE I

### ASSIGNMENT AND CONVEYANCE

**Section 1.1**    **Assignment and Conveyance**.  Assignor, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, does hereby, as of the Effective Time, GRANT, BARGAIN, SELL, CONVEY, ASSIGN, TRANSFER, SET OVER AND DELIVER, unto Assignee and its successors and assigns, and Assignee does hereby accept from Assignor, all of Assignor's right, title and interest in and to the following, less and except the Excluded Assets (collectively, the "*Assets*"):

(a)    the oil, gas and mineral leases, subleases and other leaseholds, oil, gas and mineral fee interests, royalties, overriding royalty interests, net profits interests, involuntary or statutorily pooled interests, carried interests, farmin/farmout rights, options, and other rights to Hydrocarbons in place either (i) described in **Exhibit A-1**, in each case, subject to the terms, conditions, covenants and obligations set forth therein and any depth limitations applicable thereto, or (ii) located within the Contract Area (collectively, the "*Leases*"), together with the lands covered or burdened by such Leases or pooled, unitized or communitized therewith (collectively, the "*Lands*");

(b)    all oil and gas wells, water wells, injection wells, salt water disposal wells, observation wells and each other well of every nature and kind located on any of the Leases or

EXHIBIT

5

Lands, whether such wells are producing, shut-in, temporarily abandoned, abandoned, or otherwise including the wells set forth in **Exhibit A-2** (collectively, the "*Wells*");

(c)     all rights and interests in, under or derived from all unitization, communitization or pooling agreements, force pooled unit or drilling and spacing units (in each case) in effect or applicable with respect to any of the Leases or Wells and the units created thereby (the "*Units*", and together with the Leases, Wells and Rights of Way, the "*Properties*");

(d)     to the extent that they may be assigned or transferred without payment of additional consideration (unless Assignee agrees in advance in writing to pay such additional consideration), all Applicable Contracts;

(e)     all Rights-of-Way that are used in connection with the ownership or operation of any of the Leases, Wells, Units or other Assets, including the Rights-of-Way set forth in **Exhibit A-3**;

(f)     all equipment, machinery, fixtures and other personal and mixed property, operational and non-operational, known or unknown, located on any of the Leases, Wells, Units, Real Property Assets or other Assets, in each case, as of Closing, and that are used or held for use in connection with the ownership, operation or development of the Leases, Wells or other Assets, including pipelines, gathering systems, well equipment, casing, tubing, pumps, motors, fixtures, machinery, production units, compression equipment, flow lines, processing and separation facilities, treatments systems, tanks, boilers, injection facilities, disposal facilitates, pads, structures, materials, telemetry, production meters, well communication devices, and other similar items (the "*Equipment*");

(g)     all (i) Hydrocarbons attributable to the Leases and Wells, to the extent such Hydrocarbons were produced from and after the Effective Time, (ii) Inventory Hydrocarbons as of the Effective Time and (iii) Imbalances relating to the Assets;

(h)     to the extent that they may be assigned or transferred without payment of additional consideration (unless Assignee agrees in advance in writing to pay such additional consideration), all Permits that are used or held for use in connection with the ownership or operation of the Properties and the other Assets;

(i)     the Vehicles;

(j)     all air emissions credits to the extent directly attributable to the ownership and operation of the Assets by Assignor;

(k)     excluding any Excluded Asset, all files, records and data, whether in electronic form or physical form, that (i) primarily relate to the ownership, operation or development of the other Assets, and (ii) that are in Assignor's or its Affiliates' possession, including: (A) land and title records (including abstracts of title, title opinions and title curative documents); (B) Applicable Contract files; (C) correspondence; (D) operations, environmental, health and safety, pipeline safety, production, accounting and Tax records (including Asset Tax records, but excluding Tax records primarily relating to Income Taxes or that relate to Assignor's business generally); and (E) Well files and facility and Well records; *provided, however*, that the

2

following shall be excluded: (1) those items referenced above in this *sub-section (k)* that (x) may be subject to a valid legal privilege or to disclosure restrictions in favor of Third Parties, including attorney-client communications (other than title opinions), and (y) relate to employee and personnel files, (2) all e-mails on Assignor's and its Affiliates' servers and networks, and (3) all other electronic files on Assignor's and its Affiliates' servers and networks relating to the foregoing items referenced in this *sub-section (k)*, (the foregoing items, taking into account the exclusions listed above, collectively, the "***Records***"); *provided, further*, Assignor may retain a copy of all such Records (including in electronic format) and shall have no obligation to delete other electronic Records from Assignor's or its Affiliates' servers and networks; and

(l)      all rights, claims, counterclaims, defenses, causes of action and related rights to recovery (including without limitation, all audit rights, recoupment rights, recovery rights, accounting adjustments, warranty and similar claims, indemnity claims and defenses) as of the Closing Date to the extent and only to the extent (i) attributable, in whole or in part, to periods of time from and after the Effective Time, (ii) that constitute the accounts receivable for which there is an upward adjustment pursuant to Section 3.3(a)(v) or Section 3.3(a)(vi) of the Purchase and Sale Agreement, or (iii) that relate to the Assumed Obligations.

**Section 1.2      Excluded Assets**.

**EXCLUDING AND RESERVING** unto Assignor, however all of Assignor's right, title and interest in and to the following "***Excluded Assets***," all of which are excluded from this Assignment and retained by Assignor:

(a)      all of Assignor's corporate minute books, financial and Tax records and other business records that relate to Assignor's business generally (including the ownership and operation of the Assets), and all records excluded from the definition of "***Records***";

(b)      except to the extent an upward adjustment to the Purchase Price has been made with respect thereto pursuant to Section 3.3(a) of the Purchase and Sale Agreement, all trade credits, accounts, receivables and all other proceeds, income or revenues attributable to the Assets with respect to any period of time prior to the Effective Time;

(c)      refunds due Assignor by a Third Party for any overpayment of rentals or Burdens attributable to the Assets with respect to any period of time prior to the Effective Time;

(d)      subject to Section 5.3 of the Purchase and Sale Agreement, all rights and interests relating to the Assets (i) under any existing policy or agreement of insurance, (ii) under any bond or (iii) to any insurance or condemnation proceeds or awards arising, in each case, from acts, omissions or events, or damage to or destruction of property occurring prior to Closing;

(e)      all prepaid expenses, deposits, and cash (including rights with respect to restricted cash and escrows) held by or on behalf of Assignor from or for the account of other working interest owners with respect to operations conducted prior to Closing;

(f)      all claims for refunds, credits, carry-forward amounts or similar benefits relating to Seller Taxes;

3

(g)    except to the extent reasonably necessary for the ongoing operation of the Assets, all network equipment and associated peripherals, and all SCADA hardware (including servers, storage, communications, peripherals) and associated software that is (i) owned (not licensed or leased) by Assignor and (ii) not located on the Properties;

(h)    all of Assignor's proprietary computer software, patents, trade secrets, copyrights, names, trademarks, logos and other intellectual property;

(i)    all documents and instruments of Assignor that may be protected by an attorney-client privilege;

(j)    all data, if any, that cannot be disclosed to Assignee as a result of confidentiality arrangements under agreements with Third Parties;

(k)    all geophysical and other seismic and related technical data and information relating to the Assets, subject however, to the Seismic License Agreement, covering any such geophysical and other seismic and related technical data and information relating to the Assets that is owned by Assignor;

(l)    documents prepared or received by Assignor or its Affiliates or their representatives with respect to (i) lists of prospective purchasers for the Assets, (ii) bids submitted by other prospective purchasers of the Assets, (iii) analyses by Assignor or its Affiliates of any bids submitted by any prospective purchaser, (iv) correspondence between or among Assignor or its Representatives, on the one hand, and any prospective purchaser other than Assignee, on the other hand and (v) correspondence between Assignor and any of its Representatives with respect to any bids, prospective purchasers or the transactions contemplated by this Assignment;

(m)    any assets that are excluded pursuant to the provisions of Section 4.1(b), Section 5.2(d)(iv), Section 5.4, Section 5.5 or Section 6.1(c)(iii) of the Purchase and Sale Agreement;

(n)    all overhead costs and expenses paid or payable by Third Party non-operators to Assignor or any of its Affiliates pursuant to any applicable joint operating agreement and attributable to periods of time prior to Closing;

(o)    Assignor's and its Affiliates' reserve studies, estimates and evaluations, estimates and valuations of assets or unliquidated liabilities, pilot studies, engineering, production, financial or economic studies, reports or forecasts, and any and all similar forward-looking economic, evaluative, or financial information relating to the Assets;

(p)    all rights, claims, counterclaims, defenses, causes of action and related rights to recovery (including without limitation, warranty and similar claims, indemnity claims and defenses, and any and all contract rights, claims, revenues, audit rights, recoupment rights, recovery rights, accounting adjustments, mispayments, or other claims of any nature in favor of Assignor), in each case, to the extent attributable to (i) periods of time prior to the Effective Time, (ii) the Excluded Assets, or (iii) any of Assignor's indemnity obligations under this Assignment;

4

(q)     the marketing and processing agreements set forth in Section 2.2(q) of the Purchase and Sale Agreement;

(r)     environmental reports or studies prepared for Assignor's internal use and any related analyses and communications; provided that the following final environmental reports or studies shall, in each case to the extent relating to the Assets, be provided to Assignee: (i) reports or studies prepared by Third Parties in two (2) years preceding the Execution Date of the Purchase and Sale Agreement, (ii) reports or studies relating to ongoing Environmental Conditions and (iii) reports or studies which are otherwise material and prepared in the two (2) years preceding the Execution Date;

(s)     all Leases, Lands, Wells, Permits, Rights-of-Way and Applicable Contracts, monitoring wells and other Equipment, to the extent pertaining to the remediation operations on the Saddle Ridge Site, as set forth on **Exhibit B**; and

(t)     the Equipment set forth in Section 2.2(t) of the Purchase and Sale Agreement.

**TO HAVE AND TO HOLD** the Assets, together with all rights, privileges and appurtenances thereto, unto Assignee and its successors and assigns forever, subject to the reservations, covenants, terms and conditions set forth in this Assignment.

**Section 1.3    Subject to Agreements**. This Assignment is expressly made subject to that certain unrecorded Purchase and Sale Agreement dated as of December 23, 2021 but made effective as of the Effective Time between Assignor and Assignee (the "***Purchase and Sale Agreement***"), the terms of which shall survive the delivery of this Assignment as provided therein.

## ARTICLE II
## ASSUMPTION OF OBLIGATIONS

**Section 2.1    Assumption**. From and after Closing, subject to the Purchase and Sale Agreement, Assignee hereby assumes all obligations and Liabilities of Assignor and its Affiliates, known or unknown, with respect to the Assets, regardless of whether such obligations or Liabilities arose prior to, on or after the Effective Time, including all obligations and Liabilities relating in any manner to the use, ownership or operation of the Assets, including obligations to (a) furnish makeup gas and/or settle Imbalances according to the terms of applicable gas purchase and sale, processing, gathering, marketing, storage or transportation Applicable Contracts included in the Assets, (b) pay Working Interests, Burdens and other interests, owners' revenues or proceeds attributable to sales of Hydrocarbons, including those held in suspense (including the Suspense Funds) to the extent attributable to the Assets, (c) properly plug and abandon any and all wells and pipelines, including future wells, inactive wells or temporarily abandoned wells, drilled on the Assets, (d) to re-plug any well, wellbore or previously plugged Well on the Assets to the extent required or necessary under applicable Laws or under Applicable Contracts, (e) dismantle or Decommission and remove any Equipment and other property of whatever kind located on the Assets related to or associated with operations and activities conducted by whomever on the Assets, (f) clean up and/or Remediate the Assets in accordance with the Leases, any Applicable Contracts and applicable Laws, including all Environmental Laws, and (g) perform all obligations

5

applicable to or imposed on the lessee, owner, or operator under the Leases and the Applicable Contracts, or as required by applicable Laws (all of said obligations and Liabilities herein being referred to as the "*Assumed Obligations*").

## ARTICLE III
## LIMITED WARRANTY

**Section 3.1    Special Warranty**.  Subject to the limitations and provisions set forth in Section 5.1(c) of the Purchase and Sale Agreement, this Assignment is made, executed, and delivered whereby Assignor warrants Defensible Title to the Wells unto Assignee against every Person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Assignor, but not otherwise, subject to the Permitted Encumbrances (such special warranty contained in this Assignment, the "*Special Warranty*").

**Section 3.2    Subrogation**.  To the extent permitted by Law, Assignee will be subrogated to Assignors' rights in and to representations, warranties and covenants given or made by Assignor's predecessors in interest with respect to the Assets.  Assignor hereby grants and transfers to Assignee, to the extent so transferable and permitted by Law, the benefit of and the right to enforce the covenants, representations, and warranties, if any, which such Assignor is entitled to enforce with respect to the Assets.

## ARTICLE IV
## MISCELLANEOUS PROVISIONS

**Section 4.1    Disclaimers.**

(a)    EXCEPT AS AND TO THE LIMITED EXTENT EXPRESSLY SET FORTH IN ARTICLE VII OF THE PURCHASE AND SALE AGREEMENT AND THE CERTIFICATE DELIVERED BY ASSIGNOR AT CLOSING PURSUANT TO SECTION 12.6 OF THE PURCHASE AND SALE AGREEMENT, AND EXCEPT FOR THE SPECIAL WARRANTY (I) ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, AND (II) ASSIGNOR EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR, IN EACH CASE, ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE OR ANY OF ITS AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF ASSIGNOR OR ANY OF ITS AFFILIATES).

(b)    EXCEPT AS AND TO THE LIMITED EXTENT EXPRESSLY REPRESENTED OTHERWISE IN ARTICLE VII OF THE

6

PURCHASE AND SALE AGREEMENT AND THE CERTIFICATE DELIVERED BY ASSIGNOR AT CLOSING PURSUANT TO SECTION 12.6 OF THE PURCHASE AND SALE AGREEMENT, AND EXCEPT FOR THE SPECIAL WARRANTY, AND WITHOUT LIMITING THE GENERALITY OF SECTION 4.3(a) OF THE PURCHASE AND SALE AGREEMENT, ASSIGNOR EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (I) TITLE TO ANY OF THE ASSETS, (II) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, IN EACH CASE, RELATING TO THE ASSETS, (III) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ASSETS, (IV) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS (ASSIGNEE HAVING ACKNOWLEDGED THAT (A) THERE ARE UNCERTAINTIES INHERENT IN ATTEMPTING TO MAKE SUCH PROJECTIONS AND FORECASTS, (B) ASSIGNEE IS FAMILIAR WITH SUCH UNCERTAINTIES AND (C) ASSIGNEE ASSUMES FULL RESPONSIBILITY FOR MAKING ITS OWN EVALUATION OF THE ADEQUACY AND ACCURACY OF ALL SUCH PROJECTIONS AND FORECASTS FURNISHED), (V) THE PRODUCTION OF HYDROCARBONS FROM THE ASSETS, OR WHETHER PRODUCTION HAS BEEN CONTINUOUS, OR IN PAYING QUANTITIES, OR ANY PRODUCTION OR DECLINE RATES, (VI) THE MAINTENANCE, REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN OR MARKETABILITY OF THE ASSETS, (VII) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY ASSIGNOR OR THIRD PARTIES, WHETHER OR NOT MADE AVAILABLE TO ASSIGNEE OR ASSIGNEE'S REPRESENTATIVES IN ANY "DATA ROOMS," "VIRTUAL DATA ROOMS," MANAGEMENT PRESENTATIONS OR OTHERWISE, WITH RESPECT TO THE ASSETS, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO ASSIGNEE OR ITS AFFILIATES OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS ASSIGNMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (IX) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT OR ANY INFRINGEMENT OF ANY OTHER INTELLECTUAL PROPERTY.  EXCEPT AS AND TO THE

7

LIMITED EXTENT EXPRESSLY REPRESENTED OTHERWISE IN ARTICLE VII OF THE PURCHASE AND SALE AGREEMENT AND THE CERTIFICATE DELIVERED BY ASSIGNOR AT CLOSING PURSUANT TO SECTION 12.6 OF THE PURCHASE AND SALE AGREEMENT, AND EXCEPT FOR THE SPECIAL WARRANTY, ASSIGNOR FURTHER DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM LATENT VICES OR DEFECTS, FITNESS FOR A PARTICULAR PURPOSE OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY OF THE ASSETS, THE EFFECTIVENESS OR THE SUCCESS OF ANY OPERATIONS, OR RIGHTS OF A PURCHASER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION OR RETURN OF THE PURCHASE PRICE, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT ASSIGNEE SHALL BE DEEMED TO BE OBTAINING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ANY AND ALL FAULTS OR DEFECTS (KNOWN OR UNKNOWN, LATENT, DISCOVERABLE OR UNDISCOVERABLE), AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS OF THE ASSETS AS ASSIGNEE DEEMS APPROPRIATE.

(c)     OTHER THAN AS AND TO THE LIMITED EXTENT EXPRESSLY REPRESENTED OTHERWISE IN SECTION 7.14 OF THE PURCHASE AND SALE AGREEMENT AND THE CERTIFICATE DELIVERED BY ASSIGNOR AT CLOSING PURSUANT TO SECTION 12.6 OF THE PURCHASE AND SALE AGREEMENT: (I) ASSIGNOR HAS NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, ENVIRONMENTAL LIABILITIES, THE RELEASE OF HAZARDOUS SUBSTANCES INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS ASSIGNMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, (II) ASSIGNEE ACKNOWLEDGES THAT: (A) THE ASSETS HAVE BEEN USED FOR HYDROCARBON EXPLORATION AND PRODUCTION OPERATIONS AND PHYSICAL CHANGES IN SUCH ASSETS AND IN THE LANDS BURDENED THEREBY MAY HAVE OCCURRED AS A RESULT OF SUCH USES AND (B) SUCH ASSETS INCLUDE PIPELINES AND OTHER EQUIPMENT, THE LOCATIONS OF WHICH MAY NOT BE READILY APPARENT BY A PHYSICAL INSPECTION OF

8

**SUCH ASSETS OR THE LANDS BURDENED THEREBY; AND (III) SUBJECT TO ASSIGNOR'S LIMITED RIGHTS AS EXPRESSLY SPECIFIED IN THE PURCHASE AND SALE AGREEMENT FOR A BREACH OF ASSIGNOR'S REPRESENTATIONS SET FORTH IN SECTION 7.14 OF THE PURCHASE AND SALE AGREEMENT AND THE CERTIFICATE DELIVERED BY ASSIGNOR AT CLOSING PURSUANT TO SECTION 12.6 OF THE PURCHASE AND SALE AGREEMENT, ASSIGNEE SHALL BE DEEMED TO BE OBTAINING THE ASSETS "AS IS" AND "WHERE IS" WITH ANY AND ALL FAULTS FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH ENVIRONMENTAL INSPECTIONS OF THE ASSETS AS ASSIGNEE DEEMS APPROPRIATE.**

(d)    **ASSIGNOR AND ASSIGNEE AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS *SECTION ERROR! REFERENCE SOURCE NOT FOUND.1* ARE *"CONSPICUOUS"* DISCLAIMERS FOR THE PURPOSE OF ANY APPLICABLE LAW.**

**Section 4.2    No Multiple Conveyances.** The Parties acknowledge and agree that (i) a Surface Deed and Bill of Sale is being executed by Assignor and Assignee contemporaneously herewith which may effect the conveyance of a portion of the Assets, (ii) such Surface Deed and Bill of Sale will be recorded in Uintah County, Utah, and (iii) this Assignment and such Surface Deed and Bill of Sale shall not constitute multiple conveyances of any portion of the Assets being conveyed pursuant to the Purchase and Sale Agreement.

**Section 4.3    Further Assurances.** The Parties shall execute and deliver, or shall cause to be executed and delivered, from time to time such further instruments of conveyance and transfer, and shall take such other actions as Assignor or Assignee may reasonably request, to convey and deliver the Assets to Assignee, and to accomplish the orderly transfer of the Assets to Assignee in the manner contemplated by this Assignment.

**Section 4.4    Other Forms.** Separate governmental form assignments of the Assets may be executed on officially approved forms by Assignor and Assignee, in sufficient counterparts to satisfy statutory and regulatory requirements. Those assignments shall be deemed to contain all of the terms hereof. The interests conveyed by such separate assignments are the same as, and not in addition to, the Assets conveyed herein.

**Section 4.5    Exhibits.** All Exhibits that are referred to herein are hereby made part of this Assignment and incorporated herein by such reference. References in such Exhibits to instruments on file in the public records are notice of such instruments for all purposes. Unless provided otherwise, all recording references in such Exhibits are to the appropriate records of the counties in which the Assets are located.

9

Section 4.6    <u>Governing Law</u>.

(a)    This Assignment and any claim, controversy or dispute arising under or related to this Assignment or the rights, duties and relationship of the parties hereto and thereto, shall be governed by and construed and enforced in accordance with the Laws of the State of Texas, excluding any conflicts of law, rule or principle that might refer construction of provisions to the Laws of another jurisdiction; provided, however, that any claim, controversy, dispute or matter related to real property matters shall be governed by the Laws of the state in which the applicable real property is located.

(b)    The Parties agree that the appropriate, exclusive and convenient forum for any disputes between the Parties arising out of this Assignment shall be in any state or federal court in Houston, Texas, and each of the Parties irrevocably submits to the jurisdiction of such courts solely in respect of any proceeding arising out of or related to this Assignment. The Parties further agree that the Parties shall not bring suit with respect to any disputes arising out of this Assignment in any court or jurisdiction other than the above specified courts. The Parties further agree, to the extent permitted by Law, that a final and non-appealable judgment against a Party in any action or proceeding contemplated above shall be conclusive and may be enforced in any other jurisdiction within or outside the United States by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of the fact and amount of such judgment.

(c)    To the extent that either Party or any of its Affiliates has acquired, or hereafter may acquire, any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, such Party (on its own behalf and on behalf of its Affiliates) hereby irrevocably (i) waives such immunity in respect of its obligations with respect to this Assignment and (ii) submits to the personal jurisdiction of any court described in <u>Section 4.6(b)</u>.

(d)    THE PARTIES HERETO AGREE THAT THEY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS ASSIGNMENT.

Section 4.7    <u>Counterparts</u>.    This Assignment may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all of such counterparts shall constitute for all purposes one agreement. Any signature hereto delivered by a Party by electronic transmission shall be deemed an original signature hereto.

Section 4.8    <u>Successors and Assigns</u>.    Any assignment or other transfer by Assignee or its successors and assigns of any of the Assets shall not relieve Assignee or its successors or assigns

10

of any of their obligations (including indemnity obligations) hereunder, as to the Assets so assigned or transferred.

Section 4.9    **Captions**.  Titles, headings and captions appearing at the beginning of any Articles, Sections, subsections and other subdivisions of this Assignment are for convenience only, do not constitute any part of this Assignment, and shall be disregarded in construing the language hereof.

Section 4.10    **Severability**.  If any term or other provision of this Assignment is invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other conditions and provisions of this Assignment shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner to any of Assignor or Assignee.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Assignment so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

Section 4.11    **No Third Party Beneficiaries**.  Nothing in this Assignment, express or implied, is intended to confer upon anyone, other than the Parties hereto and their respective successors and assigns, any rights or remedies under or by reason of this Assignment or to constitute any Person a third-party beneficiary of this Assignment.

Section 4.12    **Defined Terms**.  Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Purchase and Sale Agreement.

*[Signature and Acknowledgement Pages Follow]*

IN WITNESS WHEREOF, the undersigned have executed this Assignment on the date set forth in the notaries' acknowledgments affixed hereto, but effective for all purposes as of the Effective Time.

### ASSIGNOR

EOG Resources, Inc.

By: _____

Name: Joe Korenek

Title:  Vice President, Business Development

### ACKNOWLEDGEMENT

STATE OF COLORADO     §
             §
COUNTY OF DENVER     §

This instrument was acknowledged before me on March 4, 2022, by Joe Korenek, as Vice President, Business Development of **EOG Resources, Inc.**, a Delaware corporation, on behalf of said corporation.

(Seal)

> **AMANDA YOURICK**
> NOTARY PUBLIC - STATE OF COLORADO
> Notary ID #20174047886
> My Commission Expires 11/20/2025

_____
Notary Public

Commission Expiration: Nov 20, 2025

Commission No.: 20174047886

*Assignor's Signature and Acknowledgement Page*
*to Assignment, Bill of Sale and Conveyance*

US-DOCS\128038858.2

IN WITNESS WHEREOF, the undersigned have executed this Assignment on the date set forth in the notaries' acknowledgments affixed hereto, but effective for all purposes as of the Effective Time.

**ASSIGNEE**

Greylock Production, LLC

By:_____

Name:  Andrew B. McCallister

Title:  Vice President & Secretary

**ACKNOWLEDGEMENT**

STATE OF COLORADO          §
                           §
COUNTY OF DENVER           §

This instrument was acknowledged before me on March 7, 2022, by Andrew B. McCallister, as Vice President & Secretary of **Greylock Production, LLC**, a Delaware limited liability company, on behalf of said company.

_____
Notary Public

(Seal)

Commission Expiration:  February 27, 2023

Commission No.:  20194008072

*Assignee's Signature and Acknowledgement Page*
*to Assignment, Bill of Sale and Conveyance*

US-DOCS\128038858.2

## MINERAL AND ROYALTY DEED

THE STATE OF WYOMING                                    §

COUNTY OF SUBLETTE                                      §
COUNTY OF LINCOLN                                       §

GRANTOR(S):  **THE KATHLEEN L. MARTIN TRUST**
             **KATHLEEN L. MARTIN, SOLE TRUSTEE**
             28950 Bear Valley Road
             Tehachapi, California 93561

GRANTEE(S):  **REMNANT ASSETS, LLC**
             P.O. Box 5443
             Austin, Texas, 78763

That The Kathleen L. Martin Trust, hereinafter referred to as ("Grantor") acting in her full capacity as Sole Trustee of the Kathleen L. Martin Trust, Dated ___9/20/2007___, for and in consideration of the sum of ten dollars cash ($10.00), cash in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, do hereby grant, convey and sell unto REMNANT ASSETS, LLC, herein after referred to as ("Grantee"), its heirs, administrators, successors and assigns, forever,; All (100% ) of Grantor's interest in and to all oil, gas, and other minerals, in, on and under, and that may be produced, saved, sold and/or marketed from any and all lands located in the States of Wyoming and Colorado, formerly attributed to owned, claimed by, or standing of record in the name of Grantor(s) as beneficiaries, heirs or successors in interest to  The Denver-La Barge Oil and Gas Company, The K-A-H-L Oil & Refining Syndicate, the Estate of Ethel P. Kahl, and or the Estate of Frances F. Martin, effective as of the date of the official grant, which lands are hereinafter referred to collectively as the "Lands", including all mineral interests, royalty interests, overriding royalty interests, working interests, production payment interests, oil, gas and mineral leasehold estate interests. Including but not limited to all of Grantor's rights, titles, claims and interests in and to the following described well(s), land(s) and/or unit(s) inclusive of those in Sublettte and Lincoln Counties, and the Entire States of Wyoming and Colorado, to wit:

SEE EXHIBIT "A"
(THE LANDS)

**NOT WITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE LANDS INDIVIDUALLY DESCRIBED ABOVE ARE SET OUT FOR THE CONVENIENCE OF THE PARTIES AND SHALL NOT BE INTERPRETED AS LIMITING THIS GRANT, IT BEING THE INTENT OF THE PARTIES THAT THIS DEED CONVEYS ALL OF THE OIL, GAS AND OTHER MINERAL AND ROYALTY INTERESTS OF EVERY KIND AND DESCRIPTION OWNED BY GRANTOR, IN THE ENTIRE STATES OF WYOMING AND COLORADO WHETHER OR NOT PARTICULARLY DESCRIBED ABOVE.**

Together with the rights of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said Lands for oil, gas and other minerals and storing, handling, transporting and marketing the same therefrom.  This grant shall run and the rights,

**EXHIBIT**

**6**

titles and privileges hereby granted shall extend to Grantee herein to Grantee's property and improvements and to Grantee's heirs, administrators, executors and assigns, forever.

For the same consideration, Grantor also sells, assigns, transfers, conveys and quitclaims to Grantee, its successors and assigns, by this Conveyance all of Grantor's interest in (I) the rights of possession at all times to produce, store, dehydrate, compress, treat, process, transport, market and remove oil, gas and minerals from the Lands, and to exercise all other rights lawfully belonging to the oil, gas and mineral estate; (II) each valid and subsisting oil, gas and/or other mineral lease (the "Lease", whether one or more) evidenced in the public records of the above named county and state, insofar as it covers the Lands (and this conveyance is made subject to any such Lease, insofar as it covers all or any portion of the Lands), together will all royalties, shut-in royalties, delay rentals and bonuses paid to extend the term within which operations may be conducted on the Lands, and other rights and interest under each such Lease, insofar as it covers the Lands; (III) all royalties, revenues, payments, accounts, suspended funds, escheated funds, refunds, interest on overdue payments and other things of value payable by any lessee, operator, purchaser of production, seller of production, or other person, with respect to any oil, gas and/or other minerals produced from or attributable to the Lands before, on or after the effective date of this Conveyance (including all such production in any tank, truck, rail car or pipeline); (IV) all liens and security interest securing the payment of such sums; and (V) all rights, claims and causes of action of Grantor with respect to such sums, including claims for the underpayment of past royalties. Grantor authorizes third parties to release information concerning the interests conveyed to Grantee.

Grantor does hereby irrevocably appoint and constitute Grantee as its agent and attorney-in-fact for the limited purpose only of executing division orders, transfer orders and all other instruments as may be necessary to make fully effective this conveyance of interests, including recovery of mis-allocated or escheated funds so that he may act in Grantor's place and stead for this limited purpose only.  Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted and likewise agrees that Grantee herein shall have the right at any time to redeem for said Grantor by payment any mortgage, taxes, or liens on the above described lands upon default in payment by Grantor, and be subrogated to the rights of the holder thereof.

TO HAVE AND TO HOLD the above described property and easement with all and singular the rights, privileges and appurtenances thereunder or otherwise belonging to said Grantee herein its heirs, successors, and assigns forever, and Grantor does hereby bind itself, its heirs, executors, administrators, successors and assigns to warrant and forever defend all and singular the said property unto the said Grantee herein, its heirs, successors and assigns of Grantee, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Any funds escrowed, escheated or held in suspense attributable to the Grantor, including proceeds of production from the lands prior to the Effective Date shall be delivered to the credit of Grantee promptly following the execution and recordation of this Deed

This Mineral and Royalty Deed is signed by Grantor as of the date of acknowledgement of Grantor's signature below but is effective for all purposes, and includes all runs of oil and deliveries of gas and other hydrocarbons  prior to the Effective Date and shall be delivered to the credit of Grantee promptly following the execution and recordation of this Deed.

**BY EXECUTING AND DELIVERING THIS INSTRUMENT YOU ARE CONVEYING ALL OF YOUR INTEREST IN THE STATES OF WYOMING AND COLORADO.**

**EXECUTED** this the _25_ day of _July_, 2023.

**GRANTOR:**

_Kathleen L Martin trustee_

**THE KATHLEEN L. MARTIN TRUST**
**KATHLEEN L. MARTIN**
As **TRUSTEE** and in her Individual Capacity

## ACKNOWLEDGEMENT

THE STATE OF <u>CALIFORNIA</u>                                    §

COUNTY OF _____Kern_____                §

On this _25th_ day of _July_____, 2023, before me, the undersigned notary public, Kathleen L. Martin, as Trustee, on behalf of the Kathleen L. Martin Trust and as an Individual, personally appears, proved to me through satisfactory evidence of identification, which were _California Driver License_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public, State of _California_____

Printed Name: _Grace Blue_____

My Commission Expires: ___Jan 12, 2025___